## HIGHTOWER OIL & REFINING CO. v. CASTOR et al.

### No. 9410.

Court of Civil Appeals of Texas. Austin.

Jan. 7, 1944.

Rehearing Denied Jan. 26, 1944.

Callaway & Callaway, of Brownwood, for appellant.

Paul Petty, of Ballinger, and E. M. Critz, of Coleman, for appellees.

McCLENDON, Chief Justice.

Suit by Hightower (Hightower Oil & Refining Company, appellant) against Castor, Zweig, and Siegel (appellees), upon an alleged promissory note signed by Castor and endorsed before delivery by Zweig and Siegel; trial to court; judgment for defendants; appeal by Hightower.

While appellees raise some questions concerning the pleadings (considered later), we regard them sufficient in every respect as against the objections urged to raise every issue affecting the merits of the question, whether, under the evidence adduced, the judgment, denying recovery, was warranted.

The salient facts shown were these:

December 3, 1941, Hightower, for the recited consideration of $10 "and other good and valuable consideration to it in hand paid by" Castor, executed an instrument assigning to Castor a mineral lease covering two contiguous tracts of 40 and 27.95 acres, respectively, together with the personal property on said lease; all with general warranty of title. The real consideration for the assignment was $18,500, of which $16,000 was paid in cash and $2,-500 was represented by the note in suit. The assignment was placed of record December 4, 1941. Zweig and Siegel were interested with Castor in the assignment, and an instrument evidencing that interest was executed by them December 3, 1941. As stated, they endorsed the note before delivery. The note and accompanying letter referred to therein read:

"$2,500.00 Dallas, Texas.
Texas, December 3, A.D. 1941.

"On or before June 1, 1942, for value received, I, the undersigned, promise to pay to the order of Hightower Oil & Refining Corporation Two Thousand Five Hundred Dollars at Dallas, Texas. This note is sub-

ject to the terms and provisions of a letter agreement between the payor and the payee, of even date herewith.

"And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, or same is collected through bankruptcy or probate proceedings, then the undersigned agree that an additional amount of ten per cent on the principal and interest then due hereon shall be added to the same as collection fees.

"Due on or before June 1, 1942.
"/s/ John H. Castor.

"Endorsed: H. W. Zweig
"M. Siegel."

Brownwood, Texas, December 3, 1941.
"Mr. John H. Castor,
"Ballinger, Texas.

"Dear Mr. Castor: In connection with the sale to you of the Hightower Oil & Refining Corporation's Brevard 'A' lease, embracing the south 27.95 acres of the north 67.95 acres of Block 21 of the Norvell Travis Survey No. 533, Runnels County, Texas, and its Brevard 'B' lease, comprising the north 40 acres, said block containing 197.78 acres, it appearing that title to the east one-half of said oil and gas leases stand in the name of J. A. Watt (all wells and personal property used in connection with the operation of said leases being located on the west one-half of said tracts), though the beneficial interest therein belongs to Hightower Oil & Refining Corporation.

"This is to advise that in addition to the warranty contained in the assignment to you of said oil and gas leasehold estate, with personal property situated thereon and used in connection therewith, Hightower Oil & Refining Corporation agrees to procure satisfactory assignment or quitclaim from the estate of J. A. Watt, who is now deceased; or, alternatively, to clear title through legal proceedings, so as to divest any apparent title out of J. A. Watt or his estate, and invest the same in Hightower Oil & Refining Corporation, its successors or assigns.

"In accordance with our agreement, $2,-500.00 of the purchase price of the 67.95-acre lease and personal property used in connection therewith is to be withheld by you, and you are to execute your note for said amount payable to Hightower Oil & Refining Corporation, due on or before

June 1, 1942. In the event the title to the east one-half of the 67.95-acre lease and the personal property thereon is legally vested in Hightower Oil & Refining Corporation, its successors and assigns, to the satisfaction of your attorneys, before June 1, 1942, said note shall become due and payable at that time. In the event the title to the east one-half of said 67.95-acre lease and personal property in connection therewith is not vested in Hightower Oil & Refining Corporation, its successors and assigns, by June 1, 1942, at your option you may declare the agreement to purchase the east one-half of said 67.95-acre lease cancelled, and the note cancelled, or you may accept title to said east one-half of said lease in its then status, proceed to clear the title, and offset the cost of such title perfecting against the amount of said note.

"If this meets with your approval, please indicate your acceptance on the line below.

"Very truly yours,
"Hightower Oil & Refining Corporation
"By /s/ Clyde Stuart
"Agent and Attorney in Fact.
"Accepted and Agreed to
" /s/ John H. Castor."

The attorneys who examined the title to the property had rendered a written opinion, addressed to Zweig and Siegel, dated November 26, 1941, which pointed out certain asserted defects in the title, and the things deemed essential to cure them. Among these was an apparent outstanding title to the east half of the lease in J. A. Watt. December 2, 1941, E. P. Woodruff, an attorney of Brownwood, made affidavit that he had represented Watt (then deceased) who was president of Hightower, and that Watt in managing the affairs of the corporation at times purchased property for the corporation, taking title in his own name and later deeding it to the corporation. The foregoing appears to have been the situation at the time the note and other documents of that date were executed. In an effort to clear up the title Hightower procured an affidavit made before a notary public of Windham County, Vermont, January 24, 1942, by Mrs. Nora J. Watt to the effect that she was the surviving wife of J. A. Watt, who died December 15, 1940; that he never had any child, natural or adopted; that he left a will (copy of which was attached) devising to her all his property; and that the will was not probated because there was no

necessity therefor. Hightower also procured an assignment to it of the lease in question, executed and acknowledged by Mrs. Watt on January 24, 1942. No effort was made by Hightower to cure any of the other specified defects in the title except that relating to a reservation affecting the S. 27.95 acres of the lease, of "certain sliding scale overriding royalty interests" in a Mrs. Biddle and husband. This interest had been assigned by the Biddles to a bank, ostensibly (so read the opinion) as collateral security for a note. The opinion called for a quitclaim from the Biddles and the bank. In this connection Hightower showed that the bank obtained judgment upon the note with foreclosure and order of sale, dated March 26, 1942, sheriff's deed, dated June 2, 1942, to the bank as purchaser under order of sale under the judgment, and deed of the same date by the bank to Hightower. It was agreed that the order of sale was issued but it could not be found and there was no proof as to its contents.

It was conclusively shown that there were a number of items of personal property covered by the assignment that were located on the east half of the lease, although the letter recited that all personal property was on the west half. The value of this property on the east half was given by Castor as $500 and by Stuart, Hightower's manager, as $2,700. Appellees went into immediate possession of the entire lease and sold most of the personal property on the east half.

 It is Hightower's theory (1) that there was substantial compliance with the conditions of the letter, or, in any event, (2) that appellees were estopped from asserting non-compliance therewith by reason of taking possession of the entire lease and appropriating the personal property thereon to their own use; whereupon liability upon the note became absolute. Appellees contend, on the other hand, that there was no compliance with the condition of the letter, in that none of the defects pointed out were cured by June 1, 1942 (time being of the essence of the condition), and that they had exercised their option to cancel the note and east half of the lease. In reply to the plea of estoppel they plead that the $16,000 was the entire consideration for the lease and personal property, which amount was far in excess of its real value, and that the note was given as consideration only for the obligation of Hightower

to clear the title by June 1, 1942. As to this latter defense there was no sustaining evidence; and it was in direct conflict with the terms of the letter, and with the agreement among the appellees of December 3, 1941, as to their several interest in the lease, which recited that $18,500 was the consideration for the assignment of the lease and personal property. It will not be necessary, therefore, to further consider this defense.

Zweig and Siegel further contended that they were not liable because the alleged note sued upon was not a negotiable instrument within the meaning of the Uniform Negotiable Instrument Law, in that it was not an absolute, but a conditional, promise to pay the sum therein designated, and was not therefore a promissory note. We overrule this contention for the following reasons: The instrument on its face described it as "this note." Zweig and Siegel were all interested in the note and its consideration, and were obligated by their express agreement, as among all the appellees, for its payment. They signed the note on its back before delivery with no other conceivable purpose than that they should be obligated thereon. That the instrument did not have the attributes of negotiability is immaterial. All three appellees were equally bound for its payment, if the condition provided in the letter was fulfilled.

We think the letter is clear and unequivocal in terms and is susceptible only of the following construction: Appellees accepted the title to the entire property and agreed to rely on the warranty of Hightower as to all defects except that stated (The Watt outstanding title) affecting only the east half of the lease. As to that defect Hightower was to procure "satisfactory assignment or quitclaim" from the Watt estate. In event he did so "to the satisfaction of your (Castor's) attorneys" by June 1, 1942, the note would become due and payable. Failing which, Castor had the option either to cancel the note and the lease as to its east half, or to proceed to clear the title himself, crediting the cost thereof upon the note.

It is to be observed that the clearing of the title was to be to the satisfaction of the attorneys. There was no testimony of any of these attorneys. The only witnesses upon the issue were Castor and Stuart. Castor knew nothing about the matter, but testified that Zweig and Siegel (neither of whom testified) were handling the matter with the attorneys in Dallas. The substance of Stuart's testimony in this regard was to the effect that after he obtained the affidavit and quitclaim of Mrs. Watt he presented them to one of the attorneys in Dallas who appeared satisfied and told him to go ahead and clear the title as to the Biddle interest. This he proceeded to do by obtaining the judgment of foreclosure and sheriff's deed which he exhibited to the attorneys. A supplemental abstract of title was delivered to the attorneys on June 2, 1942, who issued their receipt therefor, which recited:

"This abstract is received with the understanding that by such receipt, it is not intended to waive any rights which might be vested in H. W. Zweig or M. Siegel under the terms and provisions of an agreement dated December 3, 1941, between John H. Castor and Hightower Oil & Refining Company, and on note in the amount of $2500.00 dated December 3, 1941, due to Hightower Oil & Refining Company, a corporation, on or before June 1, 1942, executed by John H. Castor and endorsed by H. W. Zweig and M. Siegel; it being expressly understood that it is not intended, expressly or impliedly, by the mere receipt of this abstract, to waive, modify, or abandon any legal rights to which the parties might be entitled, but it being understood and agreed that this receipt is for the purpose of acknowledging subject to such rights, on this date, the abstract so described, with the contents thereof.

"In the event it should be construed that we are required as attorneys for the parties above named, to examine such abstract so delivered on this date, and approve or disapprove same, and if such title should be disapproved as failing, in our justified judgment, to be cured according to previous agreements between the parties, the supplemental abstract will be redelivered to Hightower Oil & Refining Company or its attorney."

The only evidence upon the issue of whether appellees exercised the option provided in the letter was the following testimony of Castor elicited by his attorney:

"Q. * * * Now did you exercise that option? A. I figured I exercised the option there—going by its own terms."

Our conclusions are: (1) Hightower made a prima facie case of compliance with the letter, which should be held conclusive, absent controverting evidence; (2) there

was no probative evidence that appellees exercised the optional right to cancel the note and assignment to the east half of the lease; and (3) in order to exercise that option it was incumbent upon them to place Hightower in statu quo by tendering the personal property still remaining on the east half and the value of that which they had disposed of and a properly executed reassignment of the east half of the lease. We will briefly state our views in support of these conclusions:

■ As to the first: Our construction of the letter (as stated) is that it required curing only the defect pointed out therein (that of the Watt outstanding title). As to other defects Castor agreed to rely upon the Hightower warranty. For this reason we pretermit any discussion of the other defects pointed out in the previous opinion of the attorneys. Furthermore, the curing of the Watt defect was to be to the satisfaction of the attorneys, and since the evidence established prima facie such satisfaction, the question whether the affidavit of Mrs. Watt and her quitclaim were sufficient evidence of title out of the Watt estate from the viewpoint of a merchantable title was not in issue. For the purposes of this appeal it may be conceded that appellees' contentions of want of such sufficiency are correct. If the attorneys were satisfied with the affidavit and quitclaim that was all that was required.

■ As to the second: If it be conceded that Hightower failed to show compliance with the letter, still, such failure alone did not effectuate a cancellation of the note. In such event, Castor was put to an election as to which of two courses he would pursue. Either he must accept the title and proceed to cure the stated defect himself at Hightower's cost, or refuse the title and cancel the note and assignment to the east half of the lease. As stated, the evidence fails to show that he did either. His quoted testimony was but the expression of an opinion and was not evidence of any fact; that is of anything done or said in the matter.

■ As to the third: Clearly cancellation of the assignment of the east half of the lease required an instrument to that effect in writing sufficient to reinvest Hightower with the title he had already assigned. The assignment to Castor had been accepted by him and his associates; placed of record on the day following its execu-

tion; and they had gone into possession under it. Appellees at the same time executed an instrument showing that all three of them were interested in the lease. Manifestly, they could not retain the title so acquired, and at the same time assert their claim of cancellation. This is elementary. The same principle applies to the personal property located on the east half of the lease. The evidence not only fails to show that they made any offer to restore this property to Hightower, but their supplemental answer shows that they were still asserting a right to it under the allegation (above) that the only consideration for the note was the obligation of Hightower to clear the title, which, they allege, was not performed.

For these reasons we hold that judgment was improperly rendered against Hightower.

Upon the asserted insufficiency of Hightower's pleadings to support a judgment in its favor upon the note, the point appellees make is that the original petition declared upon a promissory note, and the evidence showed that the alleged note sued on was not a negotiable instrument and therefore not a promissory note; and that this variance was not cured by allegations in a supplemental petition. For purposes of this issue the following resume of the pleadings will suffice:

■ The original petition declared upon a "promissory note" described as to all its terms as the note in suit, except only that it did not mention the reference in the note to the letter. It further alleged: "On June 3, 1942, after all conditions precedent had been performed and had occurred, the plaintiff made demand on defendants to pay said note," etc. Appellees' original answer contained at the outset a verified plea, denying execution by them or any of them of any promissory note payable to plaintiff. This was followed by a general denial and special plea setting forth the note and letter, the opinion of the attorneys, complete copies of each being attached as exhibits, and detailing what was done and omitted with reference to curing each of the title defects pointed out in the opinion; and asserting non-compliance with the condition of the letter as to each defect. It alleged in this connection that Castor "exercised his option given to him of declaring said agreement cancelled and said 'note' cancelled," and did not "elect" to take the title in its then condition and

"declare (clear) the same and offset the costs against" the note. In reply to this answer Hightower's first supplemental petition admitted that the note copied as an exhibit to appellees' answer was the note sued upon, but plead compliance with the letter, and further that appellees were estopped from claiming their asserted right of rescission by reason of having gone into possession of the lease and converted the personal property situated on its eastern half. Appellees file a first supplemental answer, in which they excepted to the first supplemental petition on the ground that the matters therein alleged were in fact additions to the original petition and could not properly be asserted in a supplemental petition. No action was had on this exception, and it was therefore waived. Other matters contained in the supplemental answer are not here material.

◼◼◼ We overrule the urged objection to the sufficiency of the pleading for the following reasons:

We hold the original petition clearly sufficient to identify the instrument sued upon. All of its terms, except the reference to the letter, were accurately described, and the above quoted allegation to the effect that all conditions precedent had been performed and had occurred (in literal compliance with Rule 54, Texas Rules of Civil Procedure) indicated that there were conditions precedent to liability upon the note. The fact that the instrument was designated a promissory note was not material. Appellees did not except to this allegation; but undertook to set forth the conditions precedent specifically and asserted their non-performance as required by Rule 54. Furthermore, there was no objection to the introduction of the note in evidence on the ground of variance with the instrument described in the original petition or otherwise. No essential element of Hightower's cause of action was wanting in the original petition, and the allegations of the supplemental petition were properly in reply to the answer setting up specific defenses to the note, required by Rule 54 to be plead by appellees in order to put them in issue.

The trial court's judgment is reversed and the cause (since it appears not to have been fully developed) is remanded to that court.

Reversed and remanded.

## On Appellees' Motion for Rehearing.

There are two points in the motion which we think call for some further discussion.

The first of these is to the effect (1) that the letter, properly construed, required curing all the defects pointed out in the attorneys' previous opinion, or (2) that the letter was ambiguous in this regard and open to extraneous proof.

◼◼ In the construction of written instruments it is always proper to consider the condition of the subject matter dealt with and the relation of the parties thereto. This condition and relation were these: The title to the lease had already been examined by appellees' attorneys and certain defects pointed out. It is to be noted that all of these defects, except the Watt outstanding title, affected the entire property. Only the Watt defect affected only the east half. The parties met in the office of defendants' attorneys, and there consummated the transaction. Assignment of the entire lease was executed by Hightower and accepted by appellees, who placed it of record and went into immediate possession. Manifestly, they accepted title to the west half of the lease regardless of the several defects previously pointed out by their attorneys; imposing no conditions upon Hightower except those implicit in its warranty of title. These defects affected the east as well as the west half; and to clear (or not) as to them the title to the east half would so clear (or not) as to the west half. The letter dealt only with title to the east half and specifically only with the Watt defect, which alone affected only that half. The letter first set out an outstanding "legal" title in Watt but asserting that the beneficial title was in Hightower. The next paragraph specifically set forth what Hightower was to do: obtain "satisfactory" assignment or quitclaim from Watt estate or clear the title through legal proceedings "so as to divest any apparent title out of" Watt estate and "invest same" in Hightower, etc. These two paragraphs of the letter clearly set forth what Hightower obligated itself to do and all it so obligated. The third paragraph prescribes the respective rights of the parties upon contingency of performance or nonperformance of the previous obligations imposed upon Hightower. The "legal title" to the east half referred to in that paragraph clearly, we think, refers to the previously designated outstanding "legal title" in Watt.

The other point challenges our holding that there was no probative evidence that Castor exercised his option to cancel the note and lease. The point is made that the letter did not require notice of the exercise of the option, but even if it did refusal to pay the note and the allegations of the answer constituted such notice. We did not predicate this challenged holding upon the absence of evidence of notice to Hightower of exercise of the option. Exercise of the option to rescind required placing, or at least offering to place, Hightower in statu quo by reinvesting it with the title it had assigned to Castor, and restoring the personal property on the east half or its value.

The motion is overruled.

Overruled.